**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

WILFORD DEKEESEE et al.,

Plaintiffs,

v.

PROPERTY OWNER SALVATION ARMY NGO et al.,

Defendants.

Case No.: 26-cv-04174-DMS-DEB

**ORDER**
**(1) DENYING PLAINTIFFS' MOTION FOR LEAVE TO APPEAR TELEPHONICALLY;**
**(2) DENYING PLAINTIFFS' MOTIONS FOR TEMPORARY RESTRAINING ORDER; AND**
**(3) DENYING PLAINTIFFS' MOTION TO APPOINT COUNSEL**

[ECF Nos. 11–15]

Plaintiffs Wilford Dekeese, Roberta Rust, Akemi Lee, and Lajuanna Kane, proceeding pro se, brought this action against Defendants Property Owner Salvation Army NGO; Salvation Army's General Counsel Ayana Vasquez; Salvation Army Oceanside Residences, Inc.; Kimball, Tirey, Kimball, and John LLP; Individual Property Managers; and Does 1–20. Plaintiffs allege Civil RICO, RICO conspiracy, Elder Abuse, Intentional Infliction of Emotional Distress, 24 C.F.R. § 247, Wrongful Eviction, Fair Housing Act, and Unfair Business Practices claims. Plaintiffs also seek to represent "all similarly situated elder tenants." (Compl. 1, ECF No. 1.) The Court recently denied Plaintiffs' motions for a Temporary Restraining Order ("TRO") to stop their evictions and for leave to appear telephonically. (ECF No. 9.)

Plaintiffs again move ex parte for (1) a TRO stopping their evictions, (2) appointment of counsel, and (3) leave to appear telephonically. (ECF Nos. 10–15.) The Court finds these motions suitable for decision without oral argument. *See* Civ. Pretrial & Trial Procedures of Judge Dana M. Sabraw 6.C (citing CivLR 7.1.d.). Thus, the Court denies as moot Plaintiffs' motion for leave to appear telephonically. Plaintiffs may move for leave to appear telephonically only after obtaining a hearing date from the Court. Otherwise, Plaintiffs should not make another preemptive motion for leave to appear telephonically. *See id.*

The Court next addresses Plaintiffs' TRO motions. Plaintiffs submitted three TRO motions: one signed by Michael Lee, son of Plaintiff Akemi Lee; one signed by Dekeese only; and one signed by Dekeese and Rust. As discussed below, all three motions contain the same defects,[1] so the Court analyzes them together. As a form of preliminary relief, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)). The first question is whether Defendants received notice of the TRO motion. Federal Rule of Civil Procedure 65(b) provides that courts may issue TROs "without written or oral notice to the adverse party or its attorney only if . . . the [movant] certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). Here, Mr. Lee declares that he "personally served Ms. Roman, the property manager of Silvercrest Apartments, with the Summons, Complaint, and TRO

---

[1] Mr. Lee's motion also contains an additional defect, which itself is fatal: Mr. Lee is neither an attorney nor a plaintiff representing himself and cannot file on his mother's behalf. "While a non-attorney may appear pro se on his own behalf, he has no authority to appear as an attorney for others than himself." *Johns v. Cnty. of San Diego*, 114 F.3d 874, 876 (9th Cir. 1997); *see also Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008) (collecting cases). Federal Rule of Civil Procedure 11(a) further states, "Every pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name--or by a party *personally* if the party is unrepresented." Fed. R. Civ. P. 11(a) (emphasis added). Given this defect, Plaintiff Akemi Lee and her son, Michael Lee, are put on notice that the Court may impose sanctions for future defective filings and appearances. *See* CivLR 83.1.a (outlining possible sanctions).

papers . . . ." (ECF No. 14.) Mr. Lee filed an AO Form 441 reflecting that service. (*Id.*; ECF No. 16.) The other two TRO motions concede that Defendants did not receive notice but argue notice should not be required. The Court assumes without deciding that Defendants received notice of Mr. Lee's TRO motion only.

However, even if Defendants had received notice of all three TRO motions, none of them would meet the standard to issue a TRO. The standard for issuing a TRO is "essentially the same" as that for issuing a preliminary injunction. *E.g.*, *Sausalito/Marin Cnty. Chapter of California Homeless Union v. City of Sausalito*, 522 F. Supp. 3d 648, 653 (N.D. Cal. 2021) (citation omitted). A plaintiff seeking a TRO must therefore show that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of a TRO, that the balance of equities tips in his favor, and that a TRO is in the public interest. *See Winter*, 555 U.S. at 20. The first two factors "are the most critical"; the plaintiff must show "more than a mere possibility" of success and irreparable injury. *Nken v. Holder*, 556 U.S. 418, 434–35 (2009). Here, Plaintiffs have not shown more than a possibility of success on the merits. The TRO motions simply recite factual allegations then make conclusory assertions that Plaintiffs are therefore likely to succeed on the merits. Plaintiffs fail to show how the facts satisfy the elements of their claims. For example, Mr. Lee's motion states, "Mrs. Lee, a 90-year-old senior citizen, was evicted in violation of the procedural protections of the Act and applicable HUD regulations. As a protected class member (age; familial status as a senior housing resident), her eviction without proper HUD procedures gives rise to a cognizable Fair Housing Act claim." (ECF No. 14.) But the motion does not state the elements of a Fair Housing Act claim or how they would apply to this case (e.g., what HUD procedures Defendants violated). Therefore, the Court denies all three TRO motions.

The Court next addresses Plaintiffs' motion to appoint counsel. (ECF No. 12.) Plaintiffs identify several bases under which they argue the Court should appoint counsel. First, 28 U.S.C. § 1915(e)(1) provides that courts "may request an attorney to represent any person unable to afford counsel." Appointment of counsel under § 1915(e)(1) "is

within the sound discretion of the trial court and is granted only in exceptional circumstances." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) (citation modified). Courts may not request counsel under § 1915(e)(1) unless the plaintiff has first "been determined eligible to proceed pursuant to the IFP statute due to his indigency." *Pina v. Pina*, No. 25-CV-386 JLS (SBC), 2025 WL 1361482, at *1 (S.D. Cal. May 9, 2025) (quoting *Moses v. United States Dist. Ct. S. Dist. of California*, No. 15CV01793BENRBB, 2015 WL 13238665, at *2 (S.D. Cal. Nov. 20, 2015)). Here, Mr. Dekeese filed a motion to appear in forma pauperis, but the Court denied it, and Plaintiffs "ultimately paid the filing fee." *See Mansueto v. Brown*, No. 25-CV-01859-BAS-VET, 2025 WL 2412160, at *6 (S.D. Cal. Aug. 19, 2025). "On that ground alone," the Court can deny Plaintiffs' motion under § 1915(e)(1). *See Pina*, 2025 WL 1361482, at *1.

However, even if Plaintiffs were indigent, such that they would be unable to afford counsel and the "necessities of life," the Court would not find "exceptional circumstances warranting the appointment of counsel at this time." *See id.* (quoting *Escobeda v. Applebees*, 787 F.3d 1226, 1234 (2015)). The Ninth Circuit has established that

> [a] finding of exceptional circumstances requires an evaluation of both the likelihood of success on the merits and the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved. Neither of these factors is dispositive and both must be viewed together before reaching a decision.

*Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

"[W]ith this case in its infancy—Defendant having yet to appear, much less respond to the Complaint—it is too early for the Court to determine [Plaintiffs'] likelihood of success on the merits." *See Pina*, 2025 WL 1361482, at *1 (citation modified). To the extent the Court has evaluated the merits in connection with Plaintiffs' TRO motions, Plaintiffs appear unlikely to succeed. *See supra*. Examining Plaintiffs' discursive 99-page complaint bolsters this conclusion. For example, Plaintiffs allege that the Salvation Army is a "predatory political arm of the ultra-leftists, anti-white-, anti-religious, and anti-American forces at work in our country, and . . . that this dark and disturbing problem exists

across the entire Salvation Army NGO corporate structure." (Compl. ¶ 93.) They also allege that

> around the annual Christmas party on December 20, 2025, . . . resident and part-time employee Albert Lopez, THE GRINCH, DRESSED IN A **CREEPY HALLOWEEN STYLE COSTUME, DROPPED HIS PANTS** AND FLASHED THE PLAINTIFF, GRABBED HER HAND AND ATTEMPTED TO MAKE HER GRAB HIS FLACID AND TINY PENIS. Defendants vile and disgusting behavior with intention to rape and sexually abuse an elderly WHITE WOMAN IS NOT ONLY A SEXUAL CRIME BUT FURTHER EVIDENCE OF HATE CRIMES AND DOMESTIC TERORISM ROUTINELY USED TO VIOLATE MULTIPLE PLAINTIFFS IN THE MOST NASTY AND PERSONAL MANNER.

(*Id.* ¶ 70 (emphasis in original).) The complaint is replete with similar inflammatory allegations, including that "the best maintenance manager" was murdered "because he was white" and knew of the Salvation Army's "ongoing criminal operations involving trans-national gangs" and open sex trafficking. (*Id.* ¶¶ 222-23.) Therefore, "while the Court harbors concerns about [Plaintiffs'] ability to articulate their claims," exceptional circumstances do not exist under § 1915(e)(1). *See Nefertiti v. Sec. Exch. Commissons "ACT"*, No. 23-CV-1150 JLS (JLB), 2023 WL 4568771, at *2 (S.D. Cal. July 17, 2023).

Plaintiffs also point to 42 U.S.C. § 3613(b), under which courts may appoint counsel when, as here, plaintiffs allege discriminatory housing practices. "[L]ittle case law exists on the appointment of an attorney by a court under 42 U.S.C. § 3613(b)." *Hicks v. Makaha Valley Plantation Homeowners Ass'n*, No. CIV. 14-00254 HG-BMK, 2015 WL 1608454, at *3 (D. Haw. Apr. 9, 2015). However, courts have treated case law from Title VII of the Civil Rights Act of 1964 as instructive. *Id.*; *Bryant v. Steinburg*, No. 222CV1308TLNKJNPS, 2022 WL 4961813, at *5 (E.D. Cal. Oct. 4, 2022), *report and recommendation adopted*, No. 222CV01308TLNKJN, 2022 WL 16963920 (E.D. Cal. Nov. 16, 2022). The 1964 Civil Rights Act provides that courts may appoint counsel in employment discrimination cases "in such circumstances as the court may deem just." *Bradshaw v. Zoological Soc. of San Diego*, 662 F.2d 1301, 1318 (9th Cir. 1981). In determining whether to appoint counsel under the Act, courts must assess: (1) the plaintiff's

financial resources, (2) the plaintiff's efforts to secure counsel, and (3) whether the plaintiff's claim has merit. *Bradshaw v. Zoological Soc. of San Diego*, 662 F.2d 1301, 1318 (9th Cir. 1981). "The plaintiff has the burden of persuasion as to all three factors, and an unfavorable finding as to any one factor is fatal to his request." *Hicks*, 2015 WL 1608454, at *3 (citing *Miljkovic v. Univ. of Hawaii*, No. CV. 09-00064ACK-KSC, 2010 WL 346450, at *1 (D. Haw. Jan. 27, 2010)).

As discussed, Plaintiffs have failed to show likely success on the merits, which is fatal to their request. Further, while Plaintiffs may lack financial resources, it is not clear that they have made efforts to secure counsel. Plaintiffs make the conclusory assertion that they "have made significant efforts to retain legal counsel," (ECF No. 12), but do not specify how many attorneys they contacted or why those attorneys declined the representation. *Compare Bradshaw*, 662 F.2d at 1319 (second factor met where plaintiff filed affidavit indicating over ten attorneys declined to represent her on financial terms she could meet), *with Hicks*, 2015 WL 1608454, at *4 (second factor not met where plaintiffs did not specify number of attorneys contacted or why representation was impossible). For the same reasons, the Court denies Plaintiffs' request to appoint counsel under the Court's inherent authority. Therefore, for the reasons stated above, the Court denies Plaintiffs' motions for leave to appear telephonically, a TRO, and appointment of counsel.

**IT IS SO ORDERED.**

Dated: November 16, 2026

Hon. Dana M. Sabraw
United States District Judge